SO ORDERED,

*[signature]*

**Judge Selene D. Maddox**

**United States Bankruptcy Judge**

**The Order of the Court is set forth below. The case docket reflects the date entered.**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF MISSISSIPPI

IN RE:

   YULANDA D. GUNN                                    CASE NO.: 18-13909-SDM


   **DEBTOR**                                         **CHAPTER 13**


## MEMORANDUM OPINION AND ORDER SUSTAINING IN PART DEBTOR'S OBJECTION TO NOTICE OF POSTPETITION MORTGAGE FEES, EXPENSES, AND CHARGES

**THIS CAUSE** comes before the Court on the Debtor's Objection (Dkt. #37) to the Notice of Postpetition Mortgage Fees, Expenses, and Charges ("the Notice") (Dkt. #35), which was filed by Deutsche Bank National Trust Company ("Deutsche Bank"). The Court heard oral arguments on April 9, 2019. On April 24, 2019, counsel for Deutsche Bank submitted an affidavit in support of the Notice which included an itemization of services provided by his[1] firm (Dkt. #40). The Debtor later filed a Response (Dkt. #41). After reviewing the parties' respective positions on these issues, the Court held a telephonic conference on May 15, 2019. After the conference, the Court

---

[1] Deutsche Bank was represented by Robert M. Peebles at the time the affidavit was filed. Mr. Peebles subsequently withdrew from the case and was replaced by Charles F. Barbour. The Debtor is represented by Kimberly Brown Bowling.

requested that the parties submit supplemental briefs addressing certain legal issues not addressed

by the parties at the April 9th hearing.  Both parties timely submitted those briefs, and the Court

is ready to rule.

## I.    JURISDICTION

The Court has jurisdiction over the parties to and the subject matter of this case pursuant

to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Chief

District Judge L.T. Senter dated August 6, 1984.  This is a "core proceeding" under 28 U.S.C.

§ 157(b)(2)(B) (allowance or disallowance of claims against the estate).

## II.    DISCUSSION

The parties' arguments regarding fee reasonableness are straightforward.  The Notice seeks

attorney's fees of $250.00 for plan review, $275.00 for preparation of the proof of claim, and

$500.00 for preparing an objection to confirmation.  The Debtor argues those fees—$1,025.00 in

total—are excessive and unreasonable when compared to the amount of work performed.  On the

other hand, counsel for Deutsche Bank contends that the flat fee assessed for those services is

reasonable because they are industry standards.  On a separate but relevant point, the Debtor argues

that the Objection to Confirmation of Plan (the "Objection to Confirmation") (Dkt. #18) filed by

the Deutsche Bank was unnecessary because the Mississippi Chapter 13 Form Plan (the

"Mississippi Form Plan") obviates the need for objections to confirmation based solely on

discrepancies between the proof of claim and the plan as to the monthly mortgage payment and

amount of arrearage.

The question of whether undersecured mortgage creditors may recover attorney's fees

preconfirmation is less clear.  The Debtor argues Deutsche Bank is not entitled to recover

attorney's fees during the postpetition, preconfirmation period because it is an undersecured

creditor that is secured solely by a debtor's principal residence, and such creditors are precluded

from collecting attorney's fees under § 506(b).  Deutsche Bank disagrees, arguing that the

Bankruptcy Code permits fee recovery regardless of whether the mortgage creditor is

undersecured.  The Court will first address whether Deutsche Bank is precluded entirely from

recouping its attorney's fees under § 506(b).

## A.  Attorney's Fees for Undersecured Mortgage Creditors During the Preconfirmation Period

Whether Deutsche Bank may recover any attorney's fees at all initially hinges on the

interaction between several Code and Rule provisions[2], including the anti-modification provision

contained in § 1322(b)(2), the default-curing provisions in §1322(b)(5) and §1322(e), Rule 3002.1

of the Federal Rules of Bankruptcy Procedure, and the oversecured creditor requirement in

§ 506(b).  On its face, the issue is simply a matter of statutory interpretation. The Court begins by

looking at the plain language and structure of the statute(s).  *Society of Lloyd's v. Turner,* 303 F.3d

325, 330 (5th Cir. 2002).

Section 1322(b)(2) provides that a chapter 13 plan may "modify the rights of holders of

secured claims, other than a claim secured only by a security interest in real property that is the

debtor's principal residence."  11 U.S.C. § 1322(b)(2).  This provision is often called the anti-

modification provision and is intended to protect the rights of mortgage holders.  These rights are,

however, not absolute.  Section 1322(b)(5) tempers the anti-modification provision of § 1322(b)(2)

by stating that a plan may "provide for the curing of any default within a reasonable time and

maintenance of payments while the case is pending . . . ."  11 U.S.C. § 1322(b)(5).  Taken together,

these provisions allow the creditor to collect fees and costs and for the debtor to cure prepetition

---

[2] All statutory references are to Title 11 of the United States Code (the "Bankruptcy Code") unless otherwise indicated.

arrearages in the plan. *In re Rangel*, 408 B.R. 650, 664 (Bankr. S.D. Tex. 2009) *rev'd on other grounds by In re Valazquez*, 660 F.3d 893 (5th Cir. 2011). If a chapter 13 plan proposes to cure a default, § 1322(e) provides that "[n]otwithstanding subsection (b)(2) of this section and . . . section[] 506(b) . . . of this title, the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1322(e). In this case, Deutsche Bank is a mortgage creditor with a lien against the Debtor's principal residence, and the Debtor's chapter 13 plan proposes to cure her default over the plan period.

The Notice was filed under Rule 3002.1, which allows a creditor secured by the debtor's principal residence to file a notice laying out the fees that it seeks to recover. Fed. R. Bankr. P. 3002.1(c). The Court then determines whether payment is required by the underlying agreement to cure any default or maintain payments under § 1322(b)(5). Fed R. Bankr. P. 3002.1(e). The purpose of Rule 3002.1 is to aid in the implementation of § 1322(b)(5)'s requirement that a debtor be allowed to cure a default and maintain payments of a home mortgage over the life of a chapter 13 plan. Fed. R. Bankr. P. 3002.1 Advisory Committee Notes.

From the plain language of § 1322(e), § 506(b)[3] is expressly excluded from consideration. Instead, § 1322(e) allows the agreement between a debtor and creditor to govern what amount is necessary to cure any default. *See* 8 COLLIER ON BANKRUPTCY ¶ 1322.19 (16th ed. 2019) ("By its introductory language specifically mentioning [§506(b)], section 1322(e) makes clear that [§506(b)] ha[s] no applicability in a cure situation, in which the debtor is merely keeping the

---

[3] Section 506(b) only allows an oversecured creditor to recover "reasonable fees, costs, or charges provided for under the [security] agreement." 11 U.S.C. § 506(b). Here, Schedule A reflects that the Debtor values the property at $43,000.00. Deutsche Bank's proof of claim is void as to value of the property, but it does indicate the total amount owed by the Debtor is $79,073.56. Deutsche Bank is clearly an undersecured creditor.

original contract in place and bringing it up to date."). In addition, Rule 3002.1(e) expressly provides that the court's determination of the enforceability of the fees is focused on the underlying agreement and non-bankruptcy law. In this case, the underlying agreement between the Debtor and Deutsche Bank provides that Deutsche Bank may do and pay for whatever is reasonable or appropriate to protect its interest in the property and rights under the Security Instrument. This includes the Debtor paying for Deutsche Bank's reasonable attorney's fees.

As easy as it would be for the Court to end its analysis with the unambiguous language in § 1322(e) and Rule 3002.1, at least one additional issue must be addressed: timing. Citing *In re Fuentes*, 509 B.R. 832 (Bankr. S.D. Tex. 2014), the Debtor contends that because the chapter 13 plan is not effective until the confirmation date, the anti-modification provisions in § 1322 do not apply until the plan is confirmed. If the provisions of § 1322 are not in effect, § 506(b) would govern the award of attorney's fees during the postpetition, preconfirmation period. As an undersecured creditor, Deutsche Bank would be out of luck.

While a chapter 13 plan does not go in effect until it is confirmed, § 1322 determines what the plan may or may not provide at all times, and without conforming to the parameters § 1322, a chapter 13 plan could not even get to confirmation. Logic dictates that the provisions of § 1322, which are used to craft a confirmable plan, cannot simply be ignored when determining how the plan would treat a mortgage creditor's claim, the parameters of curing a default, and other related factors.

The Debtor is correct in stating that § 506(b) applies during the postpetition, preconfirmation period. *See Rake v. Wade*, 508 U.S. 464, 468 (1993) (superseded in part by 11 U.S.C. § 1322(e)); *In re T-H New Orleans Ltd.*, 116 F.3d 790, 797 (5th Cir. 1997). Under these circumstances, however, the Court concludes that § 506(b) does *not* overcome the anti-

modification provision contained in § 1322(b)(2) where the creditor holds a secured claim secured

by a debtor's principal residence.  After a thorough review of the relevant case law[4] and statutes,

the Court concludes that Deutsche Bank is entitled to recover *some* of its attorney's fees, despite

its status as an undersecured mortgage creditor prior to plan confirmation.

### B.  Attorney's Fees for Proof of Claim Preparation and Plan Review

The Court reviews fee reasonableness in light of the work performed using the *Johnson*

factors.  *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).  The

Fifth Circuit has also provided guidance as to fee reasonableness when considering similar legal

services like those in the Notice at issue in this case.  *See Velazquez*, 660 F.3d 893, 899-90 (5th

Cir. 2011) (finding $350.00 in attorney's fees reasonable for preparation of a proof of claim and

fee application).

The Court finds instructive Judge Woodard's analysis in his order sustaining the debtor's

objection to the notice of postpetition mortgage fees, expenses, and charges which was entered in

*In re Gill*, No. 18-10604 (Bankr. N.D. Miss. September 10, 2018).  In *Gill*, the creditor's counsel

charged a flat fee to the creditor for two services: $275.00 for the proof of claim preparation and

$250.00 for plan review.  The creditor sought to recoup the fees paid to its counsel and filed the

---

[4] The Court also draws it conclusions based on the analysis of the interplay between
§ 1322(b)(2) and § 506(a) in *Nobelman v. American Sav. Bank*, 508 U.S. 324 (1993).  There, the
Supreme Court held that § 1322(b)(2) prohibited modification of *all* the prepetition, state law rights
of a mortgage creditor whose security interest is in the debtor's principal residence.  *Nobelman*,
508 U.S. at 325-26 (emphasis added).  In other words, § 1322(b)(2)'s protection from modification
extended beyond the mortgage creditor's rights merely to its secured claim under § 506(a).  *Id.*
The Court draws a similar conclusion in this case.  Just as § 1322(b)(2) prohibits a Chapter 13
debtor from using § 506(a) to reduce an undersecured homestead mortgage to the fair market value
of the mortgaged residence, § 1322(b)(2) prohibits the Debtor from using § 506(b) to exclude
undersecured creditors from recovery of expenses, including attorney's fees, during the
preconfirmation period.  All Deutsche Bank's prepetition, state law rights are protected from
modification under § 1322(b)(2).

requisite fee notice along with an itemization of services to justify the fees charged. In addition to the forty-six minutes of time spent by the attorney, the itemization included staff work time, travel, court time, and a referral fee (a fee charged by a website company when the law firm receives a case). Relying on the *Johnson* factors and *Velazquez*, Judge Woodard found the $525.00 fee for proof of claim preparation and plan review to be unreasonable because staff completed most of the work required and some of the work that was performed by the attorney was clerical in nature. Further, any costs incurred as a part of doing business (such as the referral fee) could not be charged to the debtor.

The Court agrees with Judge Woodard's reasoning in so far as it applies to this case. Here, Deutsche Bank seeks to recoup attorney's fees from the Debtor in the amount of $525.00 for proof of claim preparation and plan review. Like the creditor in *Gill*, Deutsche Bank has submitted non-contemporaneous, estimated time itemizations of the attorney and staff indicating that staff performed most of the work. In fact, the time itemizations submitted in this case are almost identical in form and substance to the itemizations submitted in *Gill*.

Here, according to the time itemization submitted by the Debtor's counsel, the attorney spent forty-two minutes preparing the proof of claim and reviewing the plan, including some tasks that are plainly clerical in nature.[5] Further, the $75.00 referral fee listed included in the itemization

---

[5] The Debtor also argued at the hearing that preparation of proofs of claim are a mere ministerial act, and therefore, attorneys should not be allowed to recover fees from the Debtor for performing that task. Admittedly, there is some debate about the extent to which the drafting of proofs of claim represent legal activity that warrant attorney's fees. See *In re Raygoza*, 556 B.R. 813, 821-25 (Bankr. S.D. Tex. 2016) (discussing split in authority over awarding of attorney's fees for proof of claim preparation). While some aspects of proof of claim preparation and/or plan review are ministerial, the Court concludes that the process involves legal work as well. Further, the Debtor conceded in her response to the affidavit submitted in support of the Notice that in light of the *Johnson* factors and the fees allowed in *Velazquez*, some attorney's fees are appropriate for this type of work.

simply represents the attorney's cost of doing business.  Both the ministerial acts completed by

Mr. Peebles and the referral fee are not chargeable to the Debtor.  The Court acknowledges that,

unlike the *Gill* case, the Debtors here were delinquent in their prepetition mortgage payments to

the creditor and that an arrearage is present in the proof of claim.  Even so, that does not alter the

complexity of reviewing the plan and preparing the proof of claim to such an extent to justify

additional attorney's fees in this case.

Based on the *Johnson* factors and the reasonable fee for similar services permitted in

*Velazquez*, the Court concludes that the fees sought by Deutsche Bank are unreasonable.  Instead,

the time expended and the legal work required to perform those services warrants Court approval

in the amount of $350.00.

## C.  Attorney's Fees for Necessary and Reasonable Objections to Confirmation

The Debtor argued at the hearing that the Objection to Confirmation was unnecessary

because the basis for the objection was the underestimated arrearage amount listed in the plan.

While Deutsche Bank also objected to feasibility, the Debtor argued that Deutsche Bank did not

pursue the issue and the Agreed Order (Dkt. #31) resolving the Objection to Confirmation only

addressed the underestimated arrearage amount and monthly mortgage payment.  The Debtor

suggests that creditors such as Deutsche Bank are simply tacking on fees to penalize debtors for

filing for bankruptcy.  Deutsche Bank did not address this argument.

The Bankruptcy Code allows parties in interest, including secured and unsecured creditors,

to object to confirmation of a chapter 13 plan. 11 U.S.C. § 1324(a).  The bases for those objections

may rest on noncompliance with § 1325 or any other provision of chapter 13 or Title 11 of the

Code.  11 U.S.C. § 1325(a)(1).  Feasibility, i.e., the debtor's ability to make payments under the

plan, is one basis for objecting to confirmation of the plan.  11 U.S.C. § 1325(a)(6).

At first glance, the Debtor's argument appears to be misplaced.  The plan listed a monthly mortgage payment of $565.00 to be paid directly to Deutsche Bank and an arrearage amount of $5,973.76 to be paid under the plan (Dkt. #12).  Deutsche Bank objected based on the arrearage amount listed in the plan, which it estimated to be $14,276.04 rather than $5,973.76 proposed by the Debtor.  The addition of $8,302.28 stretched over the life of the 60-month plan potentially affects feasibility.

While Deutsche Bank's right to object to confirmation is unquestioned, the Debtor still objects to paying attorney's fees if the objection was unnecessary and unreasonable under the circumstances.  The Debtor points to the language in the Mississippi Form Plan, Section 3.1(a), Principal Residence Mortgages, which states:

> All long term secured debt which is to be maintained and cured under the plan pursuant to 11 U.S.C. § 1322(b)(5) shall be scheduled below. Absent an objection by a party in interest, the plan will be amended consistent with the proof of claim filed by the mortgage creditor, subject to the start date for the continuing monthly mortgage payment proposed herein.

Relying on this language, the Debtor argues that a creditor's proof of claim should automatically act to amend the plan to conform with the proof of claim absent any objections by the debtor.  In other words, Deutsche Bank's Objection to Confirmation was unnecessary because the amount of the monthly mortgage payment or arrearage listed in its proof of claim would eventually control over the amounts listed in the plan.  The Court agrees with the Debtor in that if Deutsche Bank filed their objection *solely* to correct dollar amounts, the Objection to Confirmation would not have been necessary and Deutsche Bank would not be entitled to attorney's fees.[6]  The

---

[6] The Court notes that when Deutsche Bank filed its Objection to Confirmation on November 11, 2018, it had not yet filed a proof of claim. The proof of claim was not filed until December 17, 2019. Even though there was no proof of claim filed at the time Deutsche Bank filed its Objection to Confirmation, the plan would have eventually been amended to reflect the amounts listed in the proof of claim because no objections were filed.

plain language of the Mississippi Form Plan leads inevitably to this conclusion.  But Deutsche

Bank also objected to plan feasibility.  The Court is not persuaded by Debtor's suggestion that

Deutsche Bank's failure to pursue the feasibility argument initially raised in its Objection to

Confirmation renders that objection meritless.  Further, the Court is unaware of any Bankruptcy

Code provisions that require the filing of a proof of claim before an objection to confirmation can

be made.

Generally, secured creditors file objections to confirmation to protect their interests in

property and their rights under security agreements.  *In re Boyd*, 2013 WL 1844076, at *1 (Bankr.

S.D. Tex. May 1, 2013).  In *Boyd*, the debtors filed a voluntary joint petition and proposed plan

under Chapter 13 of the Bankruptcy Code.  *Id.*  The proposed plan included payment of a mortgage

arrearage in the amount of $16,000.00.  *Id.*  The creditor later filed a proof of claim listing the

actual arrearage amount as $24,713.19, almost $9,000.00 higher than was proposed in the plan.

*Id.*  That same day, the creditor also filed an objection to confirmation on the basis that the plan

understated the arrearage. (which the debtor corrected through an amended plan).  *Id.*

After confirmation of the plan, the creditor filed its notice of postpetition mortgage fees,

expenses, and charges.  *Id.*  The debtors objected to the notice, saying that the objection to

confirmation was unnecessary because the proof of claim that was filed on the same day rendered

the plan unfeasible; thus, there was no need to also object.  *Id.*  Alternatively, the Debtors argued

that the fees were excessive and unreasonable.  *Id.*  In its notice, the creditor claimed to have

incurred $425.00 in fees for filing its proof of claim, $400.00 in fees for objecting to the debtors'

plan, and $50 in fees for preparation of the fee notice.  *Id.*  The creditor's attorney testified that her

firm charged flat rate fees for both services.  *Id.*  The court found that the filing of the objection to

the debtors' plan was necessary to preserve the creditor's rights because the Texas "Uniform Plan

and Motion For Valuation of Collateral" provided that the court could adopt the property valuation in the debtors' plan if the creditor failed to timely object. *Id.* at *2. The court, however, reduced the fee for preparing and filing the objection to confirmation because many of the services rendered in connection with the objection to confirmation duplicated the services rendered in connection with filing the proof of claim. *Id.*

Although there are slight factual differences between *Boyd* and the instant case, the *Boyd* court's reasoning is applicable. Both the creditor in *Boyd* and Deutsche Bank objected to confirmation over the estimated arrearage amount listed in the respective plans. While the court in *Boyd* found the creditor's objection was necessary based on the plan's language concerning valuation of the property, this Court has already concluded that Deutsche Bank's Objection to Confirmation was appropriate because of feasibility issues. This conclusion is further bolstered by the discrepancies between the figures proposed in the Debtor's plan and those listed in the Creditor's proof of claim (Proof of Claim 13-1). The proof of claim listed a monthly payment of $616.62 and an arrearage amount of $15,054.46, an amount even higher than what was projected in Deutsche Bank's Objection to Confirmation. As such, Deutsche Bank's objection was reasonable and appropriate to protect its interest in the property and its rights under the security agreement.

Having found that Deutsche Bank's objection had a reasonable basis, the Court turns to the reasonableness of the attorney's fees charged, again using the *Johnson* factors as a guide. According to Deutsche Bank's itemized statement, much of the work performed in preparing the objection duplicated the work later performed in preparing the proof of claim and reviewing the plan. While the proof of claim was not filed on the same day as in the *Boyd* case, the Court will not allow the Deutsche Bank to assess the cost of clerical services or duplicate services to the

Debtor.  The Court finds the $500.00 in attorney's fees sought for Deutsche Bank's Objection to Confirmation is unreasonable and reduces the allowed fee to $150.00.

The right to object to confirmation is usually the creditor's only opportunity to dispute the debtor's treatment of the claim, and the Court is hesitant to place restrictions on that opportunity. Nevertheless, the Court will not allow creditors to recoup attorney's fees for unnecessary objections.  The Mississippi Form Plan's language is clear: the mortgage proof of claim controls absent objections by interested parties.  Filing objections to confirmation merely to correct a monthly mortgage payment or arrearage amount, without any other basis for objection, is unreasonable.

### III.  CONCLUSION

Based on the analysis above, it is hereby **ORDERED** that:

1.     The Objection to Notice of Postpetition Mortgage Fees, Expenses, and Charges (Dkt. #37) is **SUSTAINED IN PART**; and

2.     Deutsche Bank shall recover its attorney's fees in the amount of $500.00 for plan review, proof of claim preparation, and Objection to Confirmation preparation.


##END OF ORDER##